[No. C. D. 2160.   *En Banc.*   May 19, 1936.]

*In the Matter of the Unauthorized Practice of the Law by* W. G. McCALLUM.[1]

[1]Reported in 57 P. (2d) 1259.

*Ewing D. Colvin, C. J. Henderson, Lee C. Delle, Robert R. Pence, J. E. Burkey,* and *James P. Neal,* for the Washington State Bar Association.

*Ben Driftmier,* for the defendant.

*The Attorney General, H. E. T. Herman (Paul F. Schiffner,* of counsel), and *Edgar Anderson, amici curiae.*

MITCHELL, J.—This is a proceeding in contempt, original in this court, instituted by the petition of a committee of the Washington State Bar Association organized under the provisions of chapter 94, Laws of 1933, p. 397 (Rem. 1933 Sup., § 138-1 [P. C. § 192-21] *et seq.*), charging the defendant, W. G. McCallum, with having engaged in the unauthorized practice of law. The cause has been submitted upon the petition and the defendant's answer supported in essential particulars by an affidavit in response to a show cause order issued on the filing of the petition.

Substantially, the facts are as follows: Defendant has not been admitted to practice law in this state. In 1933, upon the death of his father, he took charge of his father's office at Anacortes, Washington, continuing the real estate and insurance business in which his father had engaged. During the years 1934 and 1935, while thus engaged and according to the usual and common practice in that line of business for many years in that vicinity and territory, he prepared a number of instruments, such as deeds, real estate contracts, mortgages and satisfactions of mortgages, a part of which work was performed for consideration; and as a notary public he took acknowledgments to such instruments, for which he received compensation.

He received a letter from a committee of the Washington State Bar Association admonishing him against the practice of law. He consulted the family lawyer

and was advised that it was lawful for him to take acknowledgments to instruments as long as he was a notary public; and he understood there would be no wrong in the drafting of instruments like those mentioned, provided no charges were made therefor. He states that, after being so advised, he in good faith prepared some of the instruments referred to in the petition without compensation. Later, he received another letter from a committee of the Washington State Bar Association admonishing him as before. Upon further consultation with his attorney, he decided, prior to the commencement of these proceedings, that he would desist from writing such instruments with or without reward, since which time he has not prepared or written any.

The petitioners contend that, under the law as construed in *Paul v. Stanley,* 168 Wash. 371, 12 P. (2d) 401, the defendant did engage in the practice of law; and they insist that, notwithstanding his present attitude, he should be punished for contempt. It may be stated that, in *Paul v. Stanley, supra,* there was proof that the defendant not only prepared legal instruments, but gave legal advice, while, here, there is neither proof nor admission that this defendant gave any legal advice. However, in order to discuss and decide the question of remedy by proceedings in contempt in this kind of a case, so thoroughly presented by counsel for the respective parties and by those acting solely as friends of the court, we shall assume, without deciding, that the defendant did practice law in the particulars mentioned.

On the threshold, defendant challenges the right of the petitioners to institute these proceedings, the argument being that, assuming the Washington State Bar Association would have the right to take such action, through its legally constituted officers, it

cannot delegate that power or right to a committee. We cannot agree with defendant in that contention. Defendant's conduct complained of here does not relate to court proceedings or to property or personal rights involved in litigation, so that the contempt charged was constructive and civil in its nature. In such cases, unauthorized practice of law, the court has the power of its own motion to institute proceedings of this kind, or cause them to be instituted. That power in the court includes the power to ratify and approve, as we do in this case with appreciation, the services of attorneys acting as a committee of the state bar association and who at the same time are officers of this court, in filing the petition making the charges.

■ Rem. 1933 Sup., § 138-14 [P. C. § 192-34], found in pocket part supplement of Volume 2, Laws of 1933, p. 401, § 14, provides that anyone, not an active member of the state bar, or who, after being disbarred or suspended from membership in the state bar, shall practice law or hold himself out as entitled to practice law,

". . . shall be guilty of a misdemeanor; *Provided, however,* Nothing herein contained shall be held to in any way affect the power of the courts to grant injunctive relief or to punish as for contempt."

Whether or not a statute for such purpose was necessary, this court, which has jurisdiction in the matter of the admission and disciplining of attorneys, clearly has the power to punish as for contempt anyone who, without authority, practices law or holds himself out as entitled to do so. Also, the court has the power by injunction proceedings to stop such practice. Thus, three remedies are provided: (1) Prosecution for a misdemeanor by the prosecuting

attorneys of the state, which carries the right of trial by jury; (2) injunction; and (3) punishment as for contempt.

The existence of power to punish as for contempt, a necessary but also dangerous power, does not mean that it must be exercised in the first instance where other remedies are available. The matter must be approached and considered judicially and decided according to the facts in each case.

Fully appreciating the evil sought to be remedied by the statutes against the unauthorized practice of law and the desirability of enforcing the statutes to that end, it, nevertheless, is not an idle thing in this kind of a case to resort to the drastic remedy of contempt proceedings, thus cutting off the right to a jury trial and at the same time ignoring the remedy by injunction wherein the defendant may be heard in entering a judgment, the terms of which may be properly enforced thereafter by proceedings in contempt, if necessary.

It must be kept in mind that there is nothing inherently wrong or contumacious in the business transactions upon which these charges are based.

We do not take occasion to analyze the many authorities cited by respective counsel, being content in this respect to refer to the holding in *In re Frederick Bugasch, Inc.*, 12 N. J. Misc. 788, 175 Atl. 110, as being in harmony with our views, as follows:

"While the court is, of course, impressed and concerned with the efforts of all and particularly those of the bar associations, which have for its purposes the vindication and preservation of its powers; for they are wholesome and praiseworthy objectives, nevertheless we are of the opinion that we should not resort to or exercise the inherent, but none the less drastic and extraordinary power and right of this court, to punish, under all circumstances, those who appear to

have committed an act or acts which may be construed as being in contempt of court. It is a power that is not and should not be exercised lightly.''

Under the facts and circumstances of this case, we are not inclined to exercise the power to punish as for contempt. The action will be dismissed, without prejudice to proceedings under any other remedy provided by law.

MAIN, HOLCOMB, BEALS, STEINERT, BLAKE, and TOLMAN, JJ., concur.

GERAGHTY, J. (concurring in the result)—I concur in the result.

I concede the right of the legislature to define the practice of law, including within the definition acts not embraced within the term as anciently understood, and to provide fine and imprisonment for unauthorized practice as so defined. But I do not concede that the enlargement of the definition enlarges the power of the court to punish for contempt. This power, as I understand it, is inherent in the court as essentially necessary to its own protection. The court may enforce order and decorum in its presence, and may punish as for contempt anyone refusing to obey its mandates or obstructing their enforcement, but the court cannot go beyond this, not even with legislative sanction, because the legislature itself cannot create crimes triable under a summary proceeding or otherwise than in accordance with the course of the common law.

It is true that, in *Paul v. Stanley,* 168 Wash. 371, 12 P. (2d) 401, this court held that a member of the bar possesses a franchise which entitles him to complain against one practicing law without authority, and that, in a proper case, the court can enjoin the unauthorized practice. This holding is grounded upon

the idea that the licensed practitioner has a property interest which is invaded by unauthorized acts of a person not admitted to the bar. But it is a wholly different thing to ask this court to lay the whole state under an interdict, suspending trial by jury and the ordinary process in criminal procedure, for the punishment of a purely statutory offense, and one having no relation to the judicial business of the court.

The court possesses a large measure of power for its own protection and in aid of the enforcement of its decrees, but the way to retain power is not to abuse it. Apart from the abstract question of power, the supreme court could perform this petty police duty only by neglecting its proper and essential duties.

MILLARD, C. J. (dissenting)—I am of the view that, under the law as construed in *Paul v. Stanley*, 168 Wash. 371, 12 P. (2d) 401, the defendant did not engage in the practice of law. Inasmuch as we have a penal statute, under which one may be punished for unauthorized practice of the law, I cannot agree to the suspension or deprivation of the right of trial by jury.