**People of the State of Illinois, Plaintiff-Appellee, v. Walton Alexander, Defendant-Appellant.**

**Gen. No. 49,433.**

First District, Fourth Division.

November 18, 1964.

L. H. Vogel, of Chicago (David F. Holland and Richard A. Walkovets, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Edward J. Hladis, Chief of Civil Division and Donald J. Veverka, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal from a judgment order adjudging defendant guilty of contempt of court for the unauthorized practice of law. The Supreme Court transferred this case to our court and it is to be considered here as a direct contempt.

Defendant is a clerk employed by a firm of attorneys and is not licensed as a lawyer, although he is studying to be an attorney. On October 19, 1962, defendant was present in court when the case of Ryan v. Monson [1] was called. Thereafter, he prepared an order spreading of record the fact that after a trial

---

[1] The law firm employing defendant represented Monson.

of the case of Ryan v. Monson the jury had disagreed and continuing the case until October 22. The trial judge added to that order "a mistrial declared."

Before entering the contempt order, the court issued a rule to show cause and a hearing was held at which only defendant testified. He was examined by his attorney, cross-examined and also interrogated by the judge. A summary of part of this testimony is incorporated in the trial judge's opinion.

In his testimony defendant stated that after the case was called on October 19, he and plaintiff's attorney in the Ryan v. Monson case stepped up; that the judge inquired whether they knew of the disagreement by the jury; [2] that the court requested that an order be prepared spreading the mistrial of record; that both defendant and plaintiff's lawyer sat down at a counsel's table and defendant wrote the order which they then presented to the judge in chambers.

An order of court reciting the verdict of a jury or setting out its failure to agree on a verdict is the responsibility of the court and the court clerk is usually ordered by the court to enter an order showing the result of a jury's deliberations. This is reflected in Freeport Motor Cas. Co. v. Tharp, 406 Ill 295, at 299, 94 NE2d 139, where the court stated:

> It is equally clear that a *judgment* exists in this State from the time the court acts even though it may not have been formally written on the record by the clerk. (People ex rel. Holbrook v. Petit, 266 Ill 628; People v. Bristow, 391 Ill 101.) And there is a well-recognized distinction between *rendering* a judgment and *entering* a judgment. The former is the judicial act of the court in pronouncing its ruling or finding in the controversy; the latter is the ministerial act of the

---

[2] The jury disagreement took place at midnight on October 18.

clerk in preserving the record of that decision. The terms are used antithetically, each in its distinctive correct legal sense. Blatchford v. Newberry, 100 Ill 484.

Also see: Jackman v. North, 398 Ill 90, 105, 75 NE2d 324; ILP Judgments § 92. An order has been accorded the same treatment, People v. Windes, 275 Ill 108, 113, 113 NE 949.

██ The preparation of an order, in the instant case, with the collaboration of opposing counsel was a ministerial act for the benefit of the court and a mere recordation of what had transpired. We cannot hold that this conduct of defendant constituted the unauthorized practice of law.

The opinion of the trial court also states as a basis for contempt that on October 22 the judge inquired of defendant whether the case of Ryan v. Monson was settled and that defendant answered in the negative. It appears that on that date the court held the case for trial. Defendant testified that he advised the court that the trial attorney was actually engaged in a trial in the Federal Court. The court held that the appearance of defendant constituted the unauthorized practice of law.

Plaintiff contends that any appearance by a non-lawyer before a court for the purpose of apprising the court of an engagement of counsel or transmitting to the court information supplied by the attorney in the case regarding the availability of counsel or the status of the case is the unauthorized practice of law.

The trial judge cites People v. Securities Discount Corp., 361 Ill 551, 198 NE 681 (where the court held a corporation collection agency in contempt for practicing law) and People v. Barasch, 406 Ill 253, 94 NE2d 148 (where a disbarred lawyer was held in contempt for practicing law) as a basis for its finding.

Plaintiff also cites other cases in which nonlawyers directly represented clients in court or performed legal services for clients. In the case of People v. Peoples Stock Yards Bank, 344 Ill 462, 176 NE 901, wherein a bank was prosecuted for the unauthorized practice of law, the following quotation at page 476, is relied upon:

According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts. . .

Since this statement relates to the appearance and management of proceedings in court on behalf of a client, we do not believe it can be applied to a situation where a clerk hired by a law firm presents information to the court on behalf of his employer.

██ We agree with the trial judge that clerks should not be permitted to make motions or participate in other proceedings which can be considered as "managing" the litigation. However, if apprising the court of an employer's engagement or inability to be present constitutes the making of a motion, we must hold that clerks may make such motions for continuances without being guilty of the unauthorized practice of law. Certainly with the large volume of cases appearing on the trial calls these days, it is imperative that this practice be followed.

In Toth v. Phillipson, 250 Ill App 247 (1928) the court said at page 250:

It is well known in this county where numerous trial courts are sitting at the same time the exigencies of such a situation require that trial attorneys be represented by their clerical force to respond tom some of the calls, and that the court acts

upon their response the same as if the attorneys of record themselves appeared in person.

After that opinion was handed down, the number of judges was substantially increased in the former Circuit and Superior Courts and the problem of answering court calls has at least doubled. We cannot add to the heavy burden of lawyers who in addition to responding to trial calls must answer pretrial calls and motion calls [3]—all held in the morning—by insisting that a lawyer must personally appear to present to a court a motion for a continuance on grounds of engagement or inability to appear because of illness or other unexpected circumstances. To reduce the backlog, trial lawyers should be kept busy actually trying lawsuits and not answering court calls.

The judgment order of the Superior Court is reversed.

Reversed.

ENGLISH, P. J. and McCORMICK, J., concur.

---

[3] These calls relate only to civil cases in Circuit Court. In addition, there are trial calls and motion calls in the Municipal Court; there is a special call of divorce cases; there are calls of chancery cases, of probate cases, of criminal cases both in the Criminal Court and in the various criminal branches hearing misdemeanor and city cases; and calls in courtrooms in the suburban towns of the county.